Here ye, here ye, this Honorable Appellate Court of the Second Judicial District is now open. The Honorable Mary S. Shostakovich presiding. Good morning, everyone. You can be seated. Good to see everyone on this hot, steamy day, right? It's nice and cool in here. You want to tell the case? Your Honor, the first case on the docket this morning is 2-22-0306. The defendant of the State of Illinois, Plaintiff Appellee v. Jennifer B. Stroud, Defendant's Appellate. Arguing on behalf of the Appellate is Janie L. Montgomery. Arguing on behalf of the Appellee, Mr. Max C. Moose. Ms. Montgomery, are you ready to proceed? I am ready. You can approach. Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is Janie Montgomery, and I represent the Appellant, Ms. Jennifer Stroud. The case we're presented with today presents one single issue, whether the jury returned legally inconsistent verdicts. And here, the verdicts were indeed legally inconsistent. The jury was asked to find that Jennifer performed the same course of conduct, resulting in the same harm to the same victim, both recklessly and knowingly. That is, that she failed to administer necessary prescribed medication to J.S., resulting in his death. Now, the defense asserts that you have two different apps, that being the medical appointments versus the admission of the meds. So therefore, they're not inconsistent. The State asserts that? No, I'm sorry. The defense. No, the State. The State asserts that, yes. The State asserts you don't have inconsistent verdicts because one verdict is for the medical appointments, failure to take to the medical appointments, and the other is for the admission of the medication. So the problem here is that it is the same victim and the same harm. And while the charging documents set out. The charging documents do set out three separate offenses. Two of them are child endangerment offenses. And one of them does, it does allege that she caused J.S.'s death by knowingly failing to bring him to his medical appointments. However, the jury was never instructed that it was to consider the child endangerment charges separately in any way. What did the State's attorney, the Assistant State's attorney, argue during closing argument? During closing argument, the State's attorney collapsed both offenses into basically the same thing and said that the theory of the case that was presented was that Jennifer and her husband started this pattern of complacency that included both not administering the medications and not taking appointments. And the State argued that these failures together were both knowing and reckless and supported both offenses. And, in fact, told the jury that it was the exact same conduct at play here. And the jury needed to worry itself about apportioning, you know, finding that it was a certain number of appointments or a certain number of missed doses that they just had to consider the entire course of conduct over time and find that this entire course of conduct supported the verdicts. Even if the State had made the argument that they make on appeal, would that have cured the problem? If they had made the argument at trial that there were separate acts, would that have cured the problem because of the way? No, because of the way these were charged and the way the jury was instructed. Well, it's pretty clear that the defendant is clearly guilty. Would you agree she's actually guilty of both offenses even though the State would have had to correctly charge her, right? I mean, she's guilty. She is guilty of both. However, she is not guilty of both as felonies because they both contain the death of J.S. And had the State charged the child endangerment as misdemeanor offenses, alleging only that these actions endangered J.S.'s health or life and not that they resulted in his death? I always wonder why there's no negotiations on appeal, why you don't call each other and say, hey, look, I know my client's guilty. Let's resolve this thing. Maybe you can get a break and get her out of the penitentiary early. That's a rhetorical question. But anyway, just saying. Isn't it incumbent upon a judge to, when a jury reaches inconsistent verdicts, legally inconsistent verdicts, to instruct the jury to continue to deliberate and inform them they cannot return guilty verdicts on both? It is, Your Honor. That is exactly what it is. Did anybody bring that up? No one brought it up. I debated when presenting this whether to present it as a straight inconsistent verdicts issue or a judicial error issue and went this route. But I think that the fact that this is an error that the judge has a duty to correct in the trial court also speaks to the state's argument presented in their briefs that this was invited error in that, you know, first, we wholeheartedly disagree that this was invited. And second, because of the fact that there are cases discussing where the judge fails to correct this error, that that is plain error. It's grave error. It can't be waived. It can't be forfeited. Because it would be unfair to place the burden of the court's error onto the defendant. Let me ask you this question. The state relies on the Bustamante case, saying, well, in Bustamante, they found both involuntary and reckless. Can't we do that here? How do you distinguish that case? Bustamante involves two different harms, two different victims. It is one act. Is it two different victims or is it one victim? Well, it's two different victims in that the victim of the criminal damage to property is the state who owns the squad car. And the victim of the reckless conduct is the police officer who was inside who was endangered by the flying glass. So it's completely inapposite here where we have the same act, the same harm, the same victim. And here it was a course of conduct. It wasn't a single act, which because of the way this was charged, that it involved this lengthy time period, the argument was that this was a harm that accumulated over time. The evidence at trial from Drs. Thrush and Gambetta was that the damage to the heart resulted over a course of months of J.S.'s immune system attacking his heart because he was not receiving his immunosuppressant medications. So it's that accumulation of harm to the heart that was required to cause the ultimate death here. If there are no further questions. I have no further questions. My colleagues have no further questions. So if you want to wrap up, remember you do have a bottle. So in sum, as charged here, the harm in both the child endangerment and manslaughter charges was J.S.'s death. There was nothing in the way that the counts were charged or the way the evidence was presented or the state's arguments that alerted the jury that it should consider that there were separate offenses here and no reason why a rational jury could have found separate crimes supported by separate mental states. And for those reasons, the verdicts here were inconsistent, and this court should reverse and remand for new trial. Thank you very much. Take your time. Thank you. You may proceed. May it please the Court. Counsel. Defendant was convicted properly of both involuntary manslaughter and child endangerment. This case does not resolve on the precise number of offenses she committed over nine months, nor speculation on the possible intentions of the jury. However, it resolves on defendant's burden that the convictions are fundamentally unable to coexist, which is not a statement. But how is this? You do have a knowing mental state, and then you have a reckless mental state. How is it not inconsistent? How are they not inconsistent? One problem with defendant's analysis is that there is an implication that there must be separate acts and separate mental states and separate victims. That's not true. If there is a separate victim while proceeding under the same acts and same mental state, that's two offenses. Similarly, if there is a disjunction in any of the other groupings, those are separate offenses. And so now we have to establish under the framework of Spears whether or not these offenses can't coexist. And here there is a great deal of evidence in the record establishing the changing mental states over time, the fact that there were numerous acts. That theory was not fled in the indictment, and it was not argued before the jury, correct? The indictments had two separately identified broad categories of medication and appointments. And the difference between the two was argued with some- And you could have, the state could have charged, as you mentioned earlier, the acts over time. The state could have separately charged each one of those failures, knowing failures on the part of the defendant as endangering the life, and then a final charge of involuntary manslaughter based upon her behavior and letting the child stay at home instead of going to the appointment. You could have done medication on one for knowing, and then an involuntary count, reckless, for failing to take the child to the appointments. It's possible it could have been chosen earlier on. And the jury instructions could have set that out as well, right? And the jury instructions could have individuated which offense applied to which conduct. However, they did not. And so under Spears, that does not establish that inconsistency that is the defendant's burden to show. Well, let me ask you this question. We have a case out of this appellate district, People v. Davidson. And I'm sure you've read this case. You probably sat here when you watched Justice Kennedy, who's the writer of that, and myself was at the panel walk-in. So how do we as an appellate court reverse or ignore what we said in the Davidson case, in this case? For two reasons. First of all, the factual dissimilarity, the difference here where Davidson had a period of hours where it was the same basis for death, this failure to, or this over-medication where the child overdosed. But one of the, it was charged like kind of like your case, slightly different ways in, you know, allowing the child to be near medications and administering medications. And in that case, we said, nope, that's the exact same thing. It's no different because you have the same victim, you have the same harm, is what Davidson said. So how do we just totally ignore that, that principle of law that we set out in that case? Because, Your Honor, there, again, the medication was what killed the child. It was what? In Davidson. In Davidson, pardon me. And in that case, the, it was ambiguous to what degree the direct medication versus the access to the medication caused the death. Here, that's not the same as in this case, where it is a period of months, not hours. It is a period of two pills a day, every day, where there are these failings, where there is this steady deterioration and the separable conducts, not just in each day, but also where defendant by her own testimony establishes, I just kind of gave up at one point. Work became too much. Things became too much. I gave more over to my husband. Right. And that's the reckless part. Pardon me? That's the reckless behavior. Absolutely. That's where. She was never really arguing down below. Well, the compensability absolutely was, that she relied on her husband, who she had no business relying, that she permitted her child to be in the care of someone that she knew was not taking care of him. And that's one of the reasons why there is a distinction. In Dickinson, there was not the same explicit jury instruction that they had to acknowledge both her own actions as well as her husband's. And I think it's an excellent argument, but it wasn't pled or argued that way in the trial court. And that's the problem for us. And even though we're not bound by even decisions from this court, we look to them for guidance. But how can we possibly affirm with this problem where it wasn't pled and it wasn't argued? Well, first, respectfully, it was argued that both her husband and her own actions could result in liability. But the state said she's guilty of both on the same behavior. And that's where the verdict has to be construed through the entirety of the record and not through a single statement by the prosecution, who in the same closing also asserted that her husband and her can both be guilty, that she can be found guilty based on her own actions and the actions of her husband. And if that were true, the trial court was in error for merging the counts, correct? Correct. How is a knowing act a lesser included of a reckless act? Your Honor, I don't believe it was a lesser included or framed that way. If it was, that would be error. But the court merged the count. Counts one and two, Your Honor. Yes. Within the voluntary. Yes. And the jury instructions, however, under the framework of spheres. The trial court said under one act, one crime. Yes, and that was error. Those are separable acts. But that's how the trial court said. No, Your Honor. Okay. However, in addition to the consistency of the convictions themselves, again, separating that into the individual spheres framework, there is also the issue of the invitation to error, where after when the defendant stood up for a closing argument, she collapsed the involuntary manslaughter as the only issue, where recklessness was the only contested point in the entire case from the closing argument. And so by telling the jury that they no longer needed to review or even countenance the child endangerment charge, then the only matter of issue before the jury, which she invited them to deliberate on, was recklessness and whether the people had proven recklessness. Part of the issue with this invitation to error is not just that the defendant stated one of the charges was already resolved. An additional issue was a fundamental inconsistency with how the jury could look at the evidence because she stated that it was enough for knowing that the people had proven that she acted knowingly as far as the death of her child was concerned. She then argued at length, partly because of her husband's failings, but generally that the evidence was insufficient, did not rise up to recklessness. And so by injecting this issue in front of the jury, she has removed the ability for her to challenge the verdicts and their consistency on appeal by basically pleading to one of them and then still permitting and asking the jury to make a determination on recklessness. But isn't that a natural result of the inconsistency in the charges? The, which, pardon me. I mean, what is the defense left with at that point? Well, the defendant was able to challenge whether or not they were able to be consistent. They could have raised this below at numerous points. And they also could have confronted the jury and said, if you find she has one mental state at one time, you cannot find she is not another. Well, where is that her responsibility? Isn't it the responsibility of the trial court to make sure that the jury instructions are correct, to make sure that the jury is instructed properly on inconsistent verdicts? I mean, that's what she's going to argue as a defense attorney. They're going to try and get the lesser offense. I mean, and you keep mentioning the Spears case in your favor, but the Spears case actually cautions against a lot of what happened in this case with respect to the jury instructions, with respect to closing argument. I mean, how is it fair now to come up here and raise these issues that you had raised below or, you know, much more offensive is to blame it on the prosecution when they're trying to try their case and get the best deal for the client? I mean, I think everyone was wrong here, if you're going to look at it, if we find that there are inconsistent verdicts. The defense was wrong. The judge was wrong. The prosecution may have been wrong, but maybe there was some method to their madness. I don't know. But how is the burden all on the defendant with respect to this issue that's before us? First, as to Spears, I'm using that because that's the framework that's been established by the Supreme Court in attempting to explain the case within those confines. And hopefully, if you have any further questions on that, I'd be happy to discuss. As to the invitation to error issue, there is an independent responsibility of the trial court, as evidenced in the briefs by the case law, that they should avoid an inconsistent verdict. That is true. However, apart from other types of forfeiture, one is invited error, and whether or not the defendant has elected to proceed in a given course and then seeks to reverse that for whatever reason. It's not specific as to the intent. What it is specific to is what did the defendant ask the jury or the court to do? If they did it, can they come up on appeal, regardless of the error done by the other parties or the court, can they come up and ask for the appellate court to revisit what they asked for? Here, defendant stood up and said, find me guilty of one offense, reach a finding on recklessness. By doing so, regardless of any other error, she has injected that error and embraced it. So that would be an ineffective assistance claim somewhere down the road, I would assume. It would be a separate claim than this one, Your Honor. And it would be related to perhaps the strategy they had, and they would have to establish why they elected to do that. Well, generally speaking, it's ineffective to stand up before the jury and ask the jury to return a guilty verdict against your client, generally, right? Not necessarily, but generally. I'm sure in most cases that would absolutely be true, Your Honor. And the record isn't sufficient to go into the defense counsel's mind as to why that decision was made, to what degree the defendant was involved in that decision, or any other factual matters. But what the facts are established in the record are there were multiple ways to arrive at these verdicts, that the jury instructions were not inconsistent with them, and that the charging instruments themselves also allowed a path to consistency. And I agree with that. I don't disagree with that. Had that been argued down below, had it been set out for the jury, look, there's a reckless here because of blah, blah, blah. There is a knowing because of blah, blah, blah. But they didn't. The prosecution never set that out, did they? Not in those terms, Your Honor. They did provide different evidence. Blah, blah, blah. No. But more to the point, they didn't, by the framework established in Spears, they did not require an inconsistent verdict in this case. And that's what we have to look at. Even if there's other issues we might have with the proceedings below, it's whether these verdicts can't be in the same reality. And under these facts here, we have a path through it under the framework of Spears. And even if there is an issue under that analysis, there's the additional issue of defendant having this result that she did request, of being found guilty of one and deliberation on the other, while also conflating the ability to find knowing and then be unable to reach recklessness. Any further questions, gentlemen? Would you care to wrap up? Please. Thank you. The record establishes numerous failings by defendant with multiple mental states over a long course of time in relation to her son's medications as well as medical appointments. Both personally and through accountability in her husband, she failed the victim and was criminally liable. She accepted guilt for child endangerment and argued instead that her husband was to blame for her son's death. The same husband she testified, she repeatedly left in charge of her son's appointments and medications. By submitting the only issue to the jury was recklessness, she invited the error she now suggests on appeal. As such, we ask the Court to affirm. Thank you. Thank you, counsel. Ms. Montgomery. There's a pretty glaring problem with the invited error argument, and that is that defense counsel did not invite the jury to return verdicts of guilt on both offenses. Counsel asked the jury to find the defendant guilty of only the endangerment charge. Because what else could counsel do at this point? At the jury instruction conference, defense counsel sought to have the jury instructed on negligence, presumably in order to argue to the jury that it should acquit her on both charges because her actions were merely negligent, not knowing, not reckless. When that was vehemently opposed by the State and refused by the judge, counsel had to very quickly determine what their next step was going to be. And I think we can all agree that it does not appear that anyone below was aware that these were inconsistent mental states. Let me ask you, your opponent brings up a point, a good point, and he's trying to distinguish the Davidson case from this case, in that this was over a long period of time. This was a long period of time where there was a reckless act, or a knowing act, then it turned into a reckless act, or vice versa. What is your response to that? How can that not be in this case? Again, the harm here that was required for both the child endangerment and the manslaughter charges was J.S.'s death. Right. So in order to, this is a bad way to phrase it, to achieve that harm, Well, she's guilty, he doesn't have to die for her to be guilty of child endangerment. Right. No, but that's how it's charged. In this case, he had to die in order for her to be guilty. Had they charged it as a misdemeanor, only requiring proof of endangerment to his life or health, without proof of him dying, that would be a separate, then she could have been found guilty of both, arguably. But because they had to prove his death for both offenses here, and counsel has argued that Davidson is distinguishable because in Davidson it was, you know, a shorter period of time. But this case is a perfect example of how not all deaths occur quickly. And here the death, as the state's witnesses testified, was the result of months of the failure to give him his medication. And the state, sorry, the charges were that it occurred over that nine-month period of time, and the jury was told by the state that the way it should view the evidence and consider this was to consider that entire period of time, and that it was month after month, failure after failure. That's a direct quote from closing arguments. So the prosecution had parsed out the time period, say, months one through three, failure to make appointments, count one. Count two, months four through seven or eight or whatever it was, failure to administer medication. Could that have saved the verdicts in your opinion? If they also had proof that the death resulted because of, you know, that period of time versus this period of time, arguably yes. It would still be two deaths. It would still be a death. It would still be one death, one victim. I mean, and Davidson, we don't really know the time period, and olanzapine could build up over time in the final dose. There was never expert testimony on that. But do we have to know a period of time here? Does that make any difference given the way this was argued? No. Now, if the prosecution or the judge had offered the jury instruction that the jury could be capable of finding guilty on one but not on the other, could that have cured this? Yes, because then the jury would not have returned a consistent verdict. And, you know, I think it's understandable that the parties were confused here because it does present an odd situation where the more serious offense has a reckless state of mind, whereas the knowing offense is the less serious in terms of sentencing. However, you know, there's been plenty of cases finding that knowing and reckless, you know, reckless is not a lesser included mental state. It's a lesser, less culpable offense. It's less culpable, but it's not included in there. One further question. What is it that you're asking us to do here? I'm asking this Court to reverse the convictions and remand the case for a new trial on all of the counts. And it will be for the parties below to cure this problem and make sure it doesn't happen again. Anything further, Joan? Thank you very much for your argument. Thank you very much, both of you, for your interesting arguments today. We'll take the case under consideration, render a decision in due course.